IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-CV-01516-RPM

NAMBE PUEBLO HOUSING ENTITY,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD),
SHAUN DONOVAN, Secretary of HUD,
SANDRA HENRIQUEZ, Assistant Secretary for Public and Indian Housing, and
GLENDA GREEN, Director, Housing Management Div. Office of Native American Programs,
      HUD Office of Public and Indian Housing

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

      This action is one of several related actions pending in this court involving challenges to

HUD's reductions of the plaintiffs' Indian Housing Block Grant (IHBG) awards pursuant to

24 C.F.R. § 1000.318 and HUD's authority to recapture purported grant overfunding.

The procedural history of the plaintiffs' challenges to HUD's elimination of Mutual Help units

from their Formula Current Assisted Stock (FCAS) is described in this court's Memorandum

Opinion dated August 31, 2012 in *Fort Peck Housing Authority v. HUD et al.*, Civil Action No.

05-cv-00018-RPM, which was also made applicable in this civil action.[1]

---

[1]Doc. #89 in the docket of *Fort Peck Housing Authority v. HUD et al.*, Civil Action No.
05-cv-00018-RPM, and doc. #45 in this civil action.

This action is unique because Nambe Pueblo Housing Entity (Nambe) filed this action in 2011, after the Native American Housing and Assistance and Self-Determination Act of 1996 (NAHASDA) was amended by the Native American Housing Assistance and Self–Determination Reauthorization Act of 2008, Pub.L. No. 110–411, 122 Stat. 4319 (the "Reauthorization Act"). The amendments to NAHASDA took effect on October 14, 2008. This action also presents special factual issues regarding the timeliness of HUD's actions and Nambe's reasons for not conveying the disputed homeownership units to the homebuyers.

In a Memorandum Opinion and Order dated September 4, 2012, this court addressed special issues unique to Nambe's claims. (#46). That Memorandum Opinion and Order describes the factual background of the disputes over 24 Mutual Help units and addressed HUD's actions with respect to 23 of the 24 units. The court found and concluded that HUD's disallowance of FCAS funding for 23 units was arbitrary and capricious because those units could not have been conveyed to the homebuyers due to a title impediment created by the failure of the Bureau of Indian Affairs (BIA) to record a master lease for the projects where the units are located. The court ruled that the amended version of NAHASDA governs this action because the agency actions challenged in this suit occurred after the effective date of the 2008 amendments. The court also found and concluded that with respect to FCAS funding for FY 2006, HUD lacked recapture authority because HUD did not "take action" within the 3-year limitation provided by 24 C.F.R. §1000.319. The court made its August 31, 2012 rulings in the *Fort Peck* action applicable to this action, including the conclusion that HUD's Guidance 98-19 is invalid. Remaining questions relating to HUD's recapture authority were left to be determined in the next phase of the coordinated litigation.

-2-

On November 19, 2012, the court held a coordinated hearing to address procedures for determining the remaining issues.  Following that hearing, the court ordered simultaneous briefing on the issues of HUD's recapture authority and the scope of this court's authority under the APA.  The court also ordered the Plaintiffs to file statements describing the requested relief and ordered HUD to respond to the Plaintiffs' statements.  After the completion of that briefing, a coordinated hearing was held on February 12, 2014.

Nambe's statement of requested relief (#56-1) includes a request for reconsideration of this court's prior ruling that the amended version of NAHASDA governs this action.  At the hearing on February 12, 2014, Nambe's counsel presented argument on that issue.

Citing *Bennett v. New Jersey*, 470 U.S. 632 (1985), Nambe argues that the pre-amendment version of NAHASDA should govern this action with respect to disputed grants funds that it received for Fiscal Years (FY) 2006 through 2008.

The issue presented in *Bennett* was whether substantive provisions of the 1978 Amendments to Title I of the Elementary and Secondary Education Act could be applied retroactively for the purpose of determining whether a grant recipient misused Title I funds during the years 1970–1972.  The United States Supreme Court held that the substantive standards of the 1978 Amendments did not affect obligations under previously made grants.  In reaching that result, the Supreme Court stated, "Practical considerations related to the enforcement of the requirements of grant-in-aid programs ... suggest that expenditures must presumptively be evaluated by the law in effect when the grants were made." 470 U.S. at 640.  The Supreme Court concluded "that absent a clear indication to the contrary in the relevant statutes or legislative history, changes in the substantive standards governing federal grant

-3-

programs do not alter obligations and liabilities arising under earlier grants." 470 U.S. at 641.

Nambe argues that *Bennett* requires that a grant recipient's obligations for a particular

grant year be evaluated by the standard in effect during the grant year in question. Nambe thus

contends that with respect to grants awards that it received in FY 2006 through 2008, the pre-

amendment version of NAHASDA should govern. That common sense argument has appeal,

but it does not fully answer the issues presented here. And, as the Supreme Court's discussion in

*Bennett* demonstrates, the question of retroactive application of amendments to a grant-in-aid

program involves statutory interpretation.

Nambe's claims involve two statutes that were amended as part of the Reauthorization

Act – 25 U.S.C. § 4152(b)(1) and 25 U.S.C. § 4161.

25 U.S.C. § 4152(b)(1) addresses the need component of the IHBG allocation formula.

That statute and 24 C.F.R. § 1000.318 provide the standards for determining when units cease to

be counted as FCAS for the purpose of determining a Tribe's grant allocation. The pre-

amendment version of 25 U.S.C. § 4152 provided that "the formula shall be based on factors that

reflect the need of the Indian tribes and the Indian areas of the tribes for assistance for affordable

housing activities," including (among other factors) "[t]he number of low-income housing

dwelling units owned or operated [as of September 30, 1997] pursuant to a contract between an

Indian housing authority for the tribe and the Secretary." HUD's regulation, 24 C.F.R.

§ 1000.318, provides in pertinent part:

> (a) Mutual Help and Turnkey III units shall no longer be considered Formula
> Current Assisted Stock when the Indian tribe, TDHE, or IHA no longer has the
> legal right to own, operate, or maintain the unit, whether such right is lost by
> conveyance, demolition, or otherwise, provided that:
>
> (1) Conveyance of each Mutual Help or Turnkey III unit occurs as soon as

practicable after a unit becomes eligible for conveyance by the terms of the MHOA; and

(2) The Indian tribe, TDHE, or IHA actively enforce strict compliance by the homebuyer with the terms and conditions of the MHOA, including the requirements for full and timely payment.

The regulation inartfully articulates the concepts that a homeownership unit ceases to be eligible for FCAS funding after the unit has been conveyed or otherwise lost and that FCAS eligibility also ceases after the unit becomes "conveyance eligible" according to the terms of the MHOA.

In the Reauthorization Act, 25 U.S.C. § 4152(b)(1) was amended to incorporate language consistent with 24 C.F.R. § 1000.318, thereby eliminating any question about whether 24 C.F.R. § 1000.318 conflicts with the statute, as amended.

Subparagraph (b)(1)(E) of 25 U.S.C. § 4152 provides that the amended version of paragraph (b)(1) governs in any action not filed within 45 days after October 14, 2008.  Nambe's complaint was filed after that deadline.

Under either version of the statute, the units disputed in this action were eligible for continued FCAS funding.  As stated in this court's order dated September 4, 2012, Nambe still owned the 23 units and could not have conveyed them due to the title impediments created by the BIA.  The record demonstrates that those title impediments were beyond  Nambe's control. The amended version of 25 U.S.C. § 4152(b)(1) provides that a grant recipient "shall not be considered to have lost the legal right to own, operate, or maintain the unit if the unit has not been conveyed to the homebuyer for reasons beyond the control of the recipient," and further provides that "reasons beyond the control of the recipient" include a cloud on the title or any other legal impediment that remains after reasonable efforts.  Under that standard, the 23 units remained eligible for FCAS funding.

Application of the pre-amendment version of 25 U.S.C § 4152(b)(1) and 24 C.F.R. § 1000.318 leads to the same conclusion. HUD misapplied 24 U.S.C. § 1000.318 when it eliminated the disputed units from Nambe's FCAS inventory. Nambe had not lost the legal right to own and operate them and could not have conveyed them to the homebuyers. HUD's elimination of the units from Nambe's FCAS was arbitrary and capricious.

Nambe's statement of requested relief includes a request for an order declaring that the pre-amendment version of NAHASDA required HUD to fund each Tribe based on the September 1997 [Annual Contributions Contract] unit count. (*See* Nambe's statement of relief requested at ¶ 3, #56-1). That claim – which is premised on Nambe's contention that 24 C.F.R. § 1000.318 conflicts with the *pre-amendment* version of 25 U.S.C. § 4152 – is foreclosed by the Tenth Circuit's opinion in *Fort Peck Housing Auth. v. HUD*, No. 06-1425 & 06-1447, 367 Fed.Appx. 884 (10th Cir. Feb. 19, 2010) (unpublished), *cert. denied*, ⸺ U.S. ⸺, 131 S.Ct. 347, 178 L.Ed.2d 148 (2010).

Nambe, like the other Plaintiffs, also claims that HUD violated 25 U.S.C. § 4161 and 25 U.S.C. § 4165 and 24 C.F.R. § 1000.532 by recapturing grant funds and adjusting Nambe's funding without providing Nambe with an opportunity for a hearing and without finding that Nambe had failed to substantially comply with NAHASDA. Nambe's statement of requested relief seeks orders declaring that HUD lacked recapture authority because it failed to comply with procedural standards of 25 U.S.C. § 4161; 25 U.S.C. § 4165 and 24 C.F.R. § 1000.532.

25 U.S.C. § 4161 describes procedural standards relating to HUD's remedies for noncompliance. In the Reauthorization Act, 25 U.S.C. § 4161 was amended by the addition of subsection (2) which states, "The failure of a recipient to comply with the requirements of

section 4152(b)(1) of this title regarding the reporting of low-income dwelling units shall not, in itself, be considered to be substantial noncompliance for purposes of this subchapter." Thus, under the amended version of 25 U.S.C. § 4161, HUD may adjust a Tribe's grant allocation without providing the grant recipient with an opportunity for a hearing or making a finding of substantial noncompliance when the adjustment results only from FCAS errors and there are no other circumstances that would constitute "substantial noncompliance."

The amendment to 25 U.S.C. § 4161 also impacted 25 U.S.C. § 4165(d) because that provision includes the phrase "[s]ubject to section 4161(a) of this title." By extension, the amendment to 25 U.S.C. § 4161 also impacted the applicable version of 24 C.F.R. § 1000.532, which addresses adjustments made by HUD under 25 U.S.C. § 4165 [section 405 of NAHASDA].

Nambe complains about a series of HUD actions that eliminated 24 units from its FCAS. Those agency actions occurred on April 29, 2009 (letter notifying Nambe of the removal of 5 units for FYs 2006, 2007, and 2008); May 14, 2010 (letter notifying Nambe of removal of 18 additional units for FYs 2006, 2007, and 2008) and July 9, 2010 (letter notifying Nambe of removal of 1 unit for FY 2008). (Compl. ¶¶ 28, 33, 34; Pl.'s mot. for prelim. inj. at p.10, #17).[2]

By those dates, 25 U.S.C § 4161 had been amended. Application of the amended version of 25 U.S.C. § 4161 to the challenged agency actions does not present any question of retroactivity. That was the basis for this court's ruling on September 4, 2012, which stated:

_____

[2]Nambe's complaint refers to disputes over other units, but the dispute actually involves only 24 units. *See* Nambe's reply #41 at p. 6 ("This case involves a dispute over HUD's decision to remove twenty-four (24) Mutual Help units from [Nambe's] FCAS unit count and to recapture funds from FY 2006-2009 IHBG grants, and HUD's refusal to allocate funds for FY 2009 through the present for twenty-three (23) of those units ...").

"because the challenged agency actions occurred after the effective date of that amendment, no hearing was required."

In any event, the relief to be awarded to Nambe does not depend on whether HUD should have provided Nambe with an opportunity for a hearing.  HUD acted arbitrarily and capriciously when it eliminated the 23 units from Nambe's FCAS inventory and consequently HUD had no authority to recapture funding associated with those units.  Additionally, HUD had no authority to recapture grant funds that Nambe had received for FY 2006 because for that year's grant allocation, HUD did not act within the 3-year time period provided in 24 C.F.R. § 1000.319.

In the court's order dated September 4, 2012, the disputes over one unit was not addressed because Nambe's counsel had suggested that those could be determined, if necessary, during the next phase of these proceedings.  At the hearing on February 12, 2014, Nambe's counsel represented that the BIA had not yet taken the actions that were necessary to remove the title impediments.  He also asserted that the title impediment discussed in the court's Memorandum Opinion dated September 4, 2012 applies equally to the one disputed unit that was not addressed previously.

Because HUD acted unlawfully, the defendants must restore to Plaintiff Nambe Pueblo Housing Entity all Indian Housing Block Grant funds that it has recaptured for twenty-three units located in housing projects known as NM99B040011 (Project 11) and Project NM99B040013 (Project 13) and one unit located in the housing project known as NM99B040017 (Project 17).

This court's authority to award such relief under the APA is addressed in the court's order dated March 7, 2014, in *Fort Peck Housing Authority v. HUD et al.*, Civil Action No. 05-cv-00018-RPM, and that ruling is made applicable here.

-8-

Nambe's statement of requested relief also seeks an order declaring that all low-rent units that it owns and operates must be funded as low-rent units regardless of whether they were converted from Mutual Help or homeownership units to low-rent units and ordering HUD to fully fund such units as low-rent units.  That issue has been addressed in the court's order dated March 7, 2014 in *Fort Peck Housing Authority v. HUD et al.*, Civil Action No. 05-cv-00018-RPM, and that ruling also is made applicable here.

Based on the foregoing it is

ORDERED that the defendants shall restore to Plaintiff Nambe Pueblo Housing Entity all Indian Housing Block Grant funds that it has recaptured for twenty-three units located in housing projects known as NM99B040011 (Project 11) and Project NM99B040013 (Project 13)and one unit located in the housing project known as NM99B040017 (Project 17); and it is

FURTHER ORDERED that the Defendants shall refrain from threatening recapture of funding associated with those units and shall not act upon any threatened recapture; and it is

FURTHER ORDERED that on or before April 15, 2014, Plaintiff Nambe Pueblo Housing Entity shall submit a proposed form of judgment, specifying the amounts to be paid to it and the asserted sources of the payment; and it is

FURTHER ORDERED that if Plaintiff Nambe Pueblo Housing Entity claims entitlement to payment for underfunding because HUD excluded those units from its FCAS in a particular year, the proposed form of judgment should include a separate itemization for those amounts, which may be submitted by May 15, 2014.  An Appendix may be provided to explain the calculation of the amount owed and the record support for the claim.

-9-

The Plaintiff's request for attorney's fees and costs will be addressed after entry of judgment.

Dated:  March 7, 2014

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge