IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Court Judge Richard P. Matsch

Civil Action No. 11-cv-1516-RPM

NAMBE PUEBLO HOUSING ENTITY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD),
JULIAN CASTRO, Secretary of HUD,
JEMINE A. BRYON, Acting Assistant Secretary for Public and Indian Housing,
GLENDA GREEN, Director, Office of Grants Management, National Office of Native American Programs,

    Defendants.

---

ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

---

    Final judgment entered on August 13, 2014. On September 10, 2014, the Plaintiff Nambe Pueblo Housing Entity ("Nambe") moved pursuant to Fed.R.Civ.P. 59(e) to alter or amend the judgment.

    Nambe argues the Court erred by rejecting Nambe's request for restoration of Indian Housing Block Grant ("IHBG") funds for the one Project 17 unit for fiscal years 2008 through 2010, and by rejecting Nambe's request for grant underfunding for all 24 disputed units through fiscal year 2013. As discussed more fully below, Nambe argues the Court overlooked facts relevant to Nambe's contention that title impediments precluded its ability to convey any of the 24 disputed units before May, 2013. Nambe also disputes this Court's legal conclusion that

-1-

compensation for grant underfunding is not available in this APA action, again urging that *Bowen v. Massachusetts*, 487 U.S. 879 (1988), provides authority for such relief.

Nambe accuses of HUD of misrepresenting the Administrative Record and public records and suggests that HUD's purported distortion of the facts caused the Court to commit legal errors. *See* Pl.'s mot. at 6. Nambe seeks to present new extra-record evidence to respond to evidence that HUD submitted with its reply in support of its motion for scheduling order, filed June 23, 2014 [#83]. With that reply, HUD submitted recorded deeds for homeownership units in Projects 11 and 13. HUD represented that each deed shows Nambe's conveyance of its interests in the home and land to the mutual help homebuyer and stated the majority of those deeds were recorded in the BIA's division of Land Titles and Records Office ("LTRO") in early 2009. *See* HUD reply, #83, at 15. In the order for entry of final judgment, the Court expressly declined to resolve the parties' factual dispute about the continuance of title impediments after 2008. Nevertheless, Nambe's Rule 59(e) motion responds to HUD's evidence for the purpose of seeking to increase the amount of the judgment entered in Nambe's favor.

Nambe asserts it now knows that before 2013 it had no valid "ownership" of housing projects 11, 13 and 17 – i.e., no proper leasehold title assigned from the previous housing authority – and so never could have validly conveyed homeownership units in those housing projects to homebuyers. To explain this new contention, Nambe states that during the process of remedying problems with master lease for the housing projects, it discovered the Bureau of Indian Affairs ("BIA") had neglected to approve the quitclaim deeds by which Nambe obtained title to leases to the projects from the Northern Pueblos Housing Association in 2003 and 2006. As factual support, Nambe submitted three extra-record documents:

Plaintiff's Exhibit 1 [#90-1] – a document captioned "Quticlaim Deed, Assignment and Assumption, and Release" between Northern Pueblos Housing Authority and Nambe, showing Northern Pueblos Housing Authority's quitclaim of its interest in the lease for Project 11 to Nambe. This document was signed by Northern Pueblos and by Nambe in 2003. It was approved by the BIA on May 16, 2013, with a note stating the BIA's approval "is made effective March 27, 2003. The original Quitclaim Deed, Assignment and Assumption, and Release was lost or misplaced."

Plaintiff's Exhibit 2 [#90-2] – a document captioned "Quitclaim Deed, Assignment and Assumption, and Release" between Northern Pueblos Housing Authority and Nambe, showing Northern Pueblos Housing Authority's quitclaim of its interest in the lease for Projects 11, 13, 17 and other projects to Nambe. This document was signed, acknowledged, and certified by Nambe in November, 2005, and signed, acknowledged, and certified by Northern Pueblos Housing Authority on February 15, 2006. The last page of the document includes a signature line for the BIA's approval of the assignment, but has no signature on behalf of the BIA.

Plaintiff's Exhibit 3 [#90-3] – a letter dated June 2, 2014, from the Governor of the Pueblo of Nambe (Phillip A. Perez) to the Superintendent of the BIA's Northern Pueblos Agency (Raymond Fry).

Nambe contends Exhibit 1 shows Nambe did not obtain clear title to Projects 11 and 13 until May 16, 2013, when the BIA supplied the missing approval. Nambe contends Exhibit 2 shows Nambe still does not have good title to Project 17, pointing to the lack of a BIA signature. Nambe further contends the BIA's neglect of these matters means that when Nambe conveyed homeownership units in Projects 11, 13 and 17 to the homebuyers, those conveyances were not

legally effective.  Plaintiff's Exhibit 3, the letter from Governor Perez to the BIA, sets forth a factual chronology and summarizes Nambe's legal position regarding the conveyances.

Nambe's arguments for amendment of the judgment are not persuasive.  Grounds warranting a motion under Rule 59(e) include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.1995)).  *See also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir.1997) ("A Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence") (internal quotation marks and citations omitted).  "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  *Servants of the Paraclete*, 204 F.3d at 1012 (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991)).

In seeking to amend the judgment, Nambe does not rely on any intervening change in controlling law or newly-discovered evidence.  Nambe's arguments about *Bowen* and the scope of relief available under the APA was the subject of prior briefing.  That aspect of Nambe's Rule 59(e) motion is an improper request for reconsideration of matters encompassed in this Court's order for final judgment.

Before the entry of judgment, Nambe never contended the quitclaim deeds from Northern Pueblos Housing Authority were ineffective after December, 2006.  This is a newly- alleged theory about title impediments, premised on evidence that could have been discovered before judgment entered.

"When supplementing a Rule 59(e) motion with additional evidence, the movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992) (quoting *Chery v. Bowman*, 901 F.2d 1053, 1057 n. 6 (11th Cir.1990)).  Nambe does not address that standard and thus fails to meet it.

The evidence that Nambe submitted with its Rule 59(e) motion is not in the Administrative Record.  Judicial review under the APA generally is confined to the record, and Nambe's arguments for consideration of extra-record evidence are not persuasive.  Nambe asks the Court to review these documents for the purpose of determining Nambe's entitlement to additional money in grant years after HUD determined the disputed units were no longer eligible for inclusion in FCAS.  Here those matters involve factual disputes that could not be determined without engaging in a de novo trial.  The limited jurisdiction provided by the APA precludes the Court from undertaking that process.

Even if the title documents submitted by the parties were considered, that evidence does not establish that Nambe would be entitled to continued grant funding for all the disputed units through 2013.

This civil action was filed after the effective date of the reauthorization act which amended relevant portions of the Native American Housing Assistance and Self-Determination Act of 1996 ("NAHASDA").  The question of whether the disputed units should have been counted as FCAS during fiscal years 2009 through 2013 is governed by the amended version of the statute and by 24 C.F.R. § 1000.318(a).

24 C.F.R. § 1000.318 provides in pertinent part:

(a) Mutual Help and Turnkey III units shall no longer be considered Formula Current Assisted Stock when the Indian tribe, TDHE, or IHA no longer has the legal right to own, operate, or maintain the unit, whether such right is lost by conveyance, demolition, or otherwise, provided that:

> (1) Conveyance of each Mutual Help or Turnkey III unit occurs as soon as practicable after a unit becomes eligible for conveyance by the terms of the MHOA; and
>
> (2) The Indian tribe, TDHE, or IHA actively enforce strict compliance by the homebuyer with the terms and conditions of the MHOA, including the requirements for full and timely payment.

24 C.F.R. § 1000.318(a).  As amended, 25 U.S.C. § 4152(b)(1) provides in pertinent part:

> (B) If the unit is a homeownership unit not conveyed within 25 years from the date of full availability, the recipient shall not be considered to have lost the legal right to own, operate, or maintain the unit if the unit has not been conveyed to the homebuyer for reasons beyond the control of the recipient.
>
> ***
>
> (D)  In this paragraph, the term "reasons beyond the control of the recipient" means, after making reasonable efforts, there remain:
>
> > (i) delays in obtaining or the absence of title status reports;
> >
> > (ii) incorrect or inadequate legal descriptions or other legal documentation necessary for conveyance;
> >
> > (iii) clouds on title due to probate or intestacy or other court proceedings; or
> >
> > (iv) any other legal impediment.

25 U.S.C. § 4152(b)(1)(B) & (D).  To prevail on its claim for grant funding for the disputed units through 2013, Nambe would need to show the Tribe could not have conveyed the units before then due to a legal impediment or lack of necessary legal documentation, and that the Tribe continued to own, operate or maintain the units.

As to the one Project 17 unit, Nambe represented the unit was conveyed in August, 2008. As to the 23 units in Projects 11 and 13, the public records provided by HUD show that all but one of the units had approved conveyance deeds, filed of record with the LTRO, most of which were recorded in 2009.  *See* HUD reply, #83 & attachments #83-2 through #83-7.  The unit conveyance deeds show explicit tribal consent and grant of use and possession rights in the homebuyer in place of Nambe.

Nambe does not dispute those conveyances occurred.  Instead, Nambe argues they were defective.  The Court recognizes that Indian lands are subject to unique property rules, but even so, Nambe has not shown its entitlement to the additional compensation it seeks.  Any problems with respect to Nambe's chain of title that existed after 2008 apparently did not preclude the BIA from recording the deeds to the homebuyers.  To the extent that any additional action by the BIA action was required to cure purported title deficiencies in Nambe's chain of title, it appears that action could be effected retroactively.  *See, e.g.,* Pl.'s Ex. 1 (showing the BIA's approval of the lease assignment for Project 11 "is made effective March 27, 2003....")

In its proposed judgment, Nambe represented that it "managed" the disputed units through 2013.  *See* Prop. Jdgt., # 80-1, ¶ 5.  The word choice is curious because the statute and regulation refer to the grant recipient's legal right to "own, operate, or maintain the unit."  After Nambe conveyed its right, title, and interest in a unit to the homebuyer and the BIA recorded the conveyance, Nambe had no continuing claim of an ownership right in that unit.  Nambe has presented no record evidence or extra-record evidence showing that it continued to operate or maintain any of the units after the Tribe conveyed its interest to the homebuyer.

Accordingly, it is

ORDERED the Plaintiff's motion to alter or amend the judgment [#90] is denied.

Date:   February 3, 2015

                                                     BY THE COURT:

                                                     s/Richard P. Matsch

                                                     _____

                                                     Richard P. Matsch, Senior Judge